(113 App. Div. 887)

BUFFALO CLEAN STREET CO. v. CITY OF BUFFALO.

(Supreme Court, Appellate Division, Fourth Department. May 2, 1906.)

MUNICIPAL CORPORATIONS—CONTRACTS—VALIDITY.

Where an ordinance authorized the board of public works to make a contract for the period of 10 years, providing for placing receptacles for waste paper at street corners, and reserved the right to terminate the contract on 60 days' notice, and a 10-year contract, entered into in pursuance of the ordinance, was terminated at the end of 2 years, the commissioner had no authority to enter into a new contract for the same purpose for a period of 10 years from the expiration of the first contract.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, § 666.]

Spring, J., dissenting.

Appeal from Special Term, Erie County.

Action by the Buffalo Clean Street Company against the city of Buffalo. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

The following is the opinion of Kruse, J., at Special Term:

The plaintiff seeks to reform a contract made with the commissioner of public works of the city of Buffalo, which provided for placing at street corners in the city, by the plaintiff's assignors, of receptacles for receiving waste paper and the like material for the use of the city, with permission to the owners of the receptacles to place thereon advertising matter. The reformation desired does not seem to be seriously resisted by the city if the contract is binding upon it. It is, however, attacked by the city upon the ground of its invalidity, it being contended that inasmuch as one contract had been made by the city for the same purpose, covering a period of 10 years, although it was terminated by the city before the expiration of that period, the commissioner of public works was without authority to make this contract in question, for the reason that the resolution or ordinance authorizing the making of such a contract provided only for a single contract, covering a period of 10 years, beginning with the date of the contract, and that, one contract having been so made, although remaining in force for only 2 years, the power so granted by the common council was exhausted, and that the attempt to make a second contract was unauthorized, and not binding upon the city. I am inclined to the view contended for on behalf of the city. I think it quite plain that this method of furnishing means for receiving and storing this waste material, and thus serving to keep the streets clean, was experimental only, and that at the end of the contract term further action would have been required on the part of the legislative branch of the city government to continue this system; and so, where the original contract was terminated by the city before the expiration of the 10-year period, under the right reserved by the city in the resolution or ordinance, such further action was likewise necessary to authorize the making of a new contract, to supplement the original contract for the unexpired term thereof. Taking the view, however, that this resolution or ordinance contemplated that this system should continue for the maximum contract term of 10 years, and that the commissioner of public works was authorized to use this system for that entire period, and to that end make contracts for different sections of the city, or to supplement by further contracts such as might be terminated before the contract period had expired, under the right reserved to the city, yet it will be seen that this contract is for the period of 10 years from its date, and thus extends beyond the original maximum contract period, so that even in this view the contract was unauthorized. I think this contract is not binding upon the city, and that the plaintiff is not entitled to maintain this action.

Judgment may therefore be entered declaring it void, and dismissing the complaint.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and NASH, JJ.

Simon Fleischmann, for plaintiff.

Charles L. Feldman and Edward L. Jung, for defendant.

PER CURIAM. Judgment affirmed, with costs, on opinion of Kruse, J., delivered at Special Term.

SPRING, J. (dissenting). By the ordinances passed on the 25th of July, 1900, and which comprise Exhibit A of the record, an entire new scheme was blocked out to collect and dispose of the waste paper and other litter which collected upon the streets. In the first para-

graph or subdivision the duty was imposed upon the board of public works to take charge of this business. In order to carry out the scheme, that department was authorized to enter into a contract with a respectable person or firm for the erection and maintenance of 300 of the boxes or receptacles designed for the deposit of this litter. By this contract the person or firm was to have "the exclusive right and privilege for a period of ten years * * * to erect and maintain said boxes."

In the first place, I do not think the project was intended to be experimental, unless it can be said that because a new method or plan was intended to be adopted pursuant to the ordinances an experiment was involved. The scheme was designed to continue for at least 10 years, for the first contract to be entered into was to extend over that period. A contract of that length, covering the entire city, is too extensive to denominate it a mere experiment.

In the second place, it seems to me to narrow the scope of the contract to limit the authority to the original agreement which the board of public works was to enter into. We must keep in mind that this whole business was committed to the board of public works, and the making of the contract was simply the mode of executing it. It would be rare that the one contract would continue for a period of 10 years, and the board of public works, in order to make effectual the new plan adopted, must possess the power to make new agreements as occasion should arise. The ordinances themselves, it seems to me, inherently indicate this purpose. By subdivision 4, the department of public works is directed, "as frequently as shall be necessary," to provide for the taking care of the waste paper and litter. Again, in subdivision 5, the expression "in any contract" is used, and in the succeeding subdivision, in referring to the license or privilege, we find the following language, "with whom such contract or contracts shall be made." The city is fully protected. In the first place, by subdivision 6, the right is given to terminate the contract upon 60 days' notice; in the second place, if it desired to abandon the business, it could do so by repealing the ordinances. Pursuant to the authority given it, the department of public works, now a commissioner, entered into an agreement which continued along until 1902, when he terminated it under the 60-day clause. He immediately entered into another agreement with the plaintiff, which the common council disapproved, but did not repeal the ordinances. It is not necessary here to discuss the right of the common council to interfere with the commissioner of public works to the extent of annulling the agreement which he has made. The point is, it seems to me, that the agreement was valid when executed, and, whatever expenses have been incurred (and it seems some were incurred), or whatever rights accrued to the plaintiff by virtue of the agreement, they may be entitled to; that is, it was a valid agreement at its inception, because the board of public works was authorized to make it.

The only question, therefore, to consider is what the ordinances meant, and it does not seem to me, in view of the scope of the business, of the power committed to the board of public works, the phrase-

ology of the ordinances, and the extent of the plan designed, that we can say they should be limited to the first contract made by the board.

I think the judgment should be reversed.